Daniels, J.
The land in controversy was leased by the defendant to the plaintiff and William Gr. Hevenor, on May 20, 1873, for the term of twelve years. Before the lease was executed, the land had been occupied by her brother. His interest as its possessor, was afterwards surrendered by him to his father, and he, in like manner, delivered the possession of the property over to the defendant, who was his daughter, and she continued in its possession down to the time of the execution and delivery of the lease. It may reasonably be inferred from these facts that the land had been alloted for separate cultivation, improvement, or occupancy to the plaintiff’s brother, under the authority of the statutes then in force allowing that to be done (2 R. S. 6 ed. 1095; L. 1849, p. 578, c. 420), and that it was acquired by her, by virtue of that right.
But this allotment or appropriation of the land, did not authorize the execution of the lease, for the reason that the lessees named in it were not Indians, and within the provisions of the section first referred to, were incapable of taking title from the defendant. But by the act of congress, approved February 19, *384 1875,* leases of this nature, from individual Indians to white persons, were rendered valid for a period not exceeding five years from and after the passage of the act. By virtue of the provisions eontáined in section three of this act, persons holding such leases, and being the owners of improvements upon the leasehold property, were declared to be entitled to the renewal of their leases for periods not exceeding twelve years. Under this authority, in January, 1880, the. plaintiff applied to the councillors of the Seneca nation for the renewal of this lease. At, or about that time, he had, by assignment, acquired the interest of the other lessee named in the lease, and that he could lawfully do, under section 5 of the same act, which provided that all leases mentioned in it, or provided for, should pass by assignment in writing, will, descent or otherwise, in the manner provided for by the laws of the State.
Pursuant to this application, a new lease was executed and delivered to the plaintiff, under the author *385 ity of the councillors of the Seneca nation, on April 38, 1880, extending and continuing his term in the premises for the period of twelve years from the 19 th of February, 1880. But the authority to give this lease has been denied on the part of the defendant, on the ground that no such improvement was made upon the property as under the terms of this act of congress entitled the plaintiff to the renewal of the lease.
The act has not designated what particular improvements should be made on the property, to entitle the owner of a lease, first rendered valid by its terms, to its renewal or extension, but it is provided generally, that the owner of improvements erected upon the land should be entitled to the renewed lease, and to the continued possession of the property provided for in the act. The evidence which has been taken in the case shows that the only improvement made upon the property, before the expiration of the live years mentioned in the Act of Congress, consisted of a log and brush, or stump fence built partly around the premises in 1878 or 1879. The evidence does not in positive terms show that this fence continued to exist upon the property at the time when the application was made for the renewal of the lease. But it does not appear to have been either previously removed or destroyed, and as the defendant in her evidence states that it was torn down by her after this suit was begun, the unavoidable presumption is that it then continued upon the property as it had been placed there, either in one or the other of these years. And this was an improvement upon the land made under the authority of the lessees. As the act failed to designate any particular or specific improvement, but employed terms of the most general character for the purpose of indicating what should be required to entitle the lessee to the extension of his term under its provisions, it necessarily xvas intended to include all im *386 provements placed by the lessee upon the property, and the construction or erection of a fence for the enclosure of the property, is an improvement within the general and broad signification of such terms.
The material was obtained from the land itself for the erection of this fence, but that fact in no. manner impaired the right of the -person procuring the fence to be erected, from making such an improvement the basis of his application for a renewal of the lease.
Neither does the additional circumstance that the original lease was taken by the lessees, not for the purpose of their own occupancy under it, but as a matter of speculation. For the law has not rendered the right to the renewal of the lease dependent upon the fact either that the improvement erected should be constructed from material not taken from the. leasehold property itself, or that the lease should have been obtained for the personal use or enjoyment of the land by the lessee.
The only two essential facts, under the language of the act, were the existence of the lease, and an improvement erected before the expiration of the period mentioned in the statute, upon the property, and these facts appear in the case, and fully warranted the application which was made for the extension of the plaintiff’s term. Upon these facts the act was mandatory that the further lease of the property should be given for a period not exceeding the term of twelve years from the time of the approval of the act, and that is the term created by the lease executed under' the authority of the Seneca Nation to the plaintiff in this action.
It has been objected, that the act under which the renewed lease was given was not a constitutional exercise of the legislative authority of congress. But a different view of this objection was taken by the court in Ryan v. Knorr, 19 Hun, 540, and in the unreported *387 case of the Seneca Nation v. Lawton. The execution and delivery of the lease, under the authority of the Seneca Nation to the plaintiff was entirely voluntary on the part of the .'nation, and strictly in accordance with the authority provided for in this act of congress, and under these circumstances the lease cannot be assumed to contravene any of the rights or privileges secured by treaty stipulation to the Seneca Nation of Indians.
No injustice was done to the defendant by this extension or renewal, even though it deprived her, from that time, of the annual rent reserved by the terms of the lease which she executed in 1873, for that lease under the laws of the State, was unauthorized, and it remained so until the passage of the act of congress in February, 1875, and that act by its terms rendered it a valid demise of the property only for the period of five years from the time of its passage. And that it was within the province of congress to provide, under its ample authority to regulate commerce with the Indian tribes. She therefore derived all the benefit and advantage to which she had in any form become legally entitled under the lease executed by hqr, before the date of its renewal, under the authority of the Seneca Nation, and accordingly she cannot lawfully complain of the proceedings taken for the renewal, or of the lease itself finally resulting from it. All that could legally be claimed under the authority of her lease was obtained by her, and from that time the property itself was subjected to the action of the councillors of the Seneca Nation, and under their authority over it they were not only justified in executing and delivering the renewal lease, but beyond that were actually required by the terms of the act of congress to make and deliver it to the plaintiff.
While these proceedings for this renewal were pending before the authorities of the Seneca Nation, *388 the defendant herself applied for a lease of this property, and her application resulted in the execution and delivery of such a lease for the period of twelve years on April 13,1880. But this lease was not a valid exercise of the authority vested in the Seneca Nation over this property, for the reason that the act of congress in terms, entitled the plaintiff alone to the renewal of the lease executed by the defendant, provided the application for it was made, as it was, before the expiration of five years from the time of the passage of the act. This right, as it had been created, was absolute, and neither the nation itself, nor the defendant, nor both together, could deprive the plaintiff of it. The lease delivered to the defendant was, therefore, invalid, and legally constitutes no defense whatever against the plaintiff’s claim for the recovery of the possession of this property.
Judgment must accordingly be awarded to the plaintiff for the recovery of the possession of the land in controversy, subject to the right of the defendant to reside in the house standing upon the premises, and to possess the land included within her inclosure, as that existed at the time of the execution of her lease in the year 1873.

 Laws 1875, c. 90 (18 U. S. Stat. at Large, 330), “§ 3. That all leases of land situate within the limits of said villages [including Salamanca], when established as hereinbefore provided, except those provided for in the second section of this act, in which Indians of said Seneca nation, or persons claiming under them are lessors, shall be valid and binding upon the parties thereto, and upon said Seneca nation for a period of five years from and after the passage of this act, except such as by their terms may expire at an earlier date; and at the end of said period, or at the expiration of such leases as terminate within that time, said nation, through its councillors, shall be entitled to the possession of the said lands, and shall have the power to lease the same; provided, however, that at the'expiration of said period, or the termination of said leases, as hereinbefore provided, said leases shall be renewable for periods not exceeding twelve years, and the persons who may be at such time the owner or owners of improvements erected upon such lands, shall be entitled to such renewed leases, and to continue in possession of such lands, on such conditions as may be agreed upon by him or them, and' such councillors.”