Bradley, J.
The action is ejectment, brought to recover the possession of a piece of land situate in the village of Salamanca, in the county of Cattaraugus, and within the Allegany Indian reservation. The claim made by both persons is founded upon leases or grants from the Seneca Nation of Indians, and the the question is one of priority of right. The facts, as found by the referee, are not challenged by any exception. In July, 1866, Charles Snow, a Seneca Indian, by instrument in writing executed by him,leased the premises to Allen McDonald, a white man, for the term of 10 years, and shortly thereafter the latter, in like manner, assigned or sublet to Lawrence Cere, who went into possession, and, prior to 1870, erected there a dwelling house; and he was in the actual occupancy of the premises at the time the lease hereinafter mentioned to the Cattaraugus Railroad Company was "made. In or about the year, 1872, Cere, by an instrument in writing, assigned the lease to William Dinter, who soon after went into the actual occupancy of the premises, under the lease, and paid an annual rental reserved of five dollars. In March, 1880, Dinter applied to the council of The Seneca Nation of Indians for renewal of the lease for the term *687 of 12 years, and on the 12th day of that month the lease was renewed for that term, (reserving the annual rent of five dollars,) in accordance with the usage of the nation, and pursuant to the act of congress of February 19, 1875, hereinafter more particularly mentioned. In May, 1889, Dinter sold and transferred to the defendant all his right, title, and interest in the premises; and about the time of the expiration of the term of the lease, and upon the application of the defendant therefor, a lease was made by the Seneca Nation of Indians to her for the term of 99 years. It is upon this lease, with the support of those prior leases, that the defendant relies for her defense. The plaintiff’s claim to the right of possession has for its support a lease of the premises made by the Seneca Nation of Indians to the Cattaraugus Railway Company, J une 7, 1872, to all the rights of which company under such lease the Rochester & State Line Railroad Company succeeded; and afterwards, in April, 1880, the Seneca Nation of Indians made lease of the premises to the last-named company. The plaintiff afterwards, in March, 1887, was incorporated, and became vested with all the rights of its predecessor under the lease, and all its rights derivable by relation to the lease before mentioned to the Cattaraugus Railway Company.
It may be assumed that the lease of Snow to McDonald, the transfer or sublease of the latter to Cere, and his to Dinter, were invalid at the time they were made, and gave no right as against the Seneca Nation of Indians to the premises; and unless they were rendered effectual by or through the act of congress approved February 19, 1875, the plaintiff is entitled to the possession of the premises. By that act of congress it was provided that all leases of lands within the Cattaraugus and Allegany reservations theretofore made by or with the authority of the Seneca Nation to railroad corporations were ratified, and that the Seneca Nation might lease lands within those reservations for railroad purposes, § 1; that the President of the United States should appoint three commissioners to survey, create, and establish the boundaries of the village of Salamanca and certain other villages within the Allegany reservation, including therein, as far as practicable, all lands then occupied by white settlers, § 2; that all leases of lands situate within the limits of such villages in which Indians, or the Seneca Nation, or persons claiming under them, were lessors, should be valid, and binding upon the parties thereto and upon the Seneca Nation, for a period of 5 years after the passage of the act, except such as should before then expire, and that, at the expiration of that period or the termination of the leases, they should be renewable for periods not exceeding 12 years, and the persons who should then be the owner or owners of improvements erected upon such lands should be entitled to such renewed leases, and to continue in possession on such conditions as might be agreed upon, and, when any lease should expire after its renewal, it might, at the option of the lessee, his heirs or assigns, be renewed, §8; that the Seneca Nation was authorized to lease lands within such villages to which no individual Indian or Indians, or other person claiming under him or them, were entitled to the rightful possession, § 4; and that it *688 was made the duty of the commissioners so appointed to cause lands then leased, as before mentioned, to be surveyed, and defined and designated on the maps ■ of the villages, and that all leases then existing or thereafter made should be recorded in the office of the clerk of Cattaraugus county, § 5. Leases to railroad corporations were not embraced within the provisions of the third section. By virtue of this act of congress, the lease to McDonald, the transfer or sublease from him to Cere, and. from him to Dinter, were validated as effectually as they could be without prejudice to intervening vested rights in •others to the possession of the premises. Ryan v. Knorr, 19 Hun, 540: Baker v. Johns, 38 Hun, 625; Wait v. Jameson, 15 Abb. N. C., 382. It is urged by the plaintiff’s counsel that the possessory right was effectually given to the Cattaraugus railway at the time the lease was made to it in 1872, and the plaintiff’s right of possession was not dependent upon the provisions of the act of congress before mentioned; and reference is made to the provisions of the statute of this state passed May 12th, 1836, that “ it shall be lawful for any railroad company that has been, or may hereafter be, •chartered by the legislature of this state, to contract with the ■chiefs of any nation of Indians over whose lands it may be necessary to construct such railroad, for the right to make such ■road upon such land; but no such contract shall vest in such •railroad company the fee to such lands, nor the right to occupy the same for any purpose other than what may be necessary for the construction, occupancy "and maintenance of such railroad;” the contract, however, not to be effectual until ratified by the court of common pleas of the county. Laws 1836, c. 316; 4 Edm. St. at Large, 368. The lease to the Cattaraugus Railway Company was made and ratified in accordance with the provisions of that statute, and, if it was not within the legislative power of the state to effectually authorize to be accomplished that which its provisions import, the defendant has the superior right to the possession of the lands in question. It may be assumed that the plaintiff, having the lease' from the nation, has the right to acquire the land in question by condemnation pro•ceedings under the statute; but it is not within the legislative power of the state to enable the Indian Nation to make, or others to take from the Indians, grants or leases of lands within their reservations. In that matter the federal government, having the power, under the constitution, to do so, has assumed to control it by the act of congress of June 30th, 1834, which provides that “ no purchase, grant, lease or other conveyance of lands, or of any title or claim thereto from any Indian nation or tribe of Indians, shall be of any validity, in law or equity, unless the same is made by treaty or convention entered into pursuant to the constitution.” Rev. St. U. S. § 2116. This succeeded the act of congress of March 30th, 1802, which was substantially the same, and in like manner provided for the presence of the agent of the state for the purposes there mentioned, with the commissioner of the United States appointed to hold the treaty. As respects their lands, which, subject, only to the *689 pre-emptive title, the Indians hold, they are treated as the wards of the United States; and it is only pursuant to the Federal authority that their lands can he granted or demised by or acquired by conveyance or lease from them. Worcester v. Georgia, 6 Pet. 580; Mitchel v. U. S., 9 Pet. 748; The New York Indians, 5 Wall. 761. The claim of the plaintiff, founded upon chapter 316 of the Laws of 1836, before mentioned, has no support in Seneca Nation v. Christie, 126 N. Y. 122; 37 St. Rep. 64. There the persons taking the grant had the right of pre-emption, and it was made pursuant to treaty with the Indians, at which the state of Massachusetts and the United States were represented, in compliance with the act of congress of 1802. The only question in that action was whether a ratification of the treaty by the senate of the United States was essential to the validity of the grant; and it was disposed of on the able and instructive opinion of Judge Andrews upon the subject. It may be observed that the provisions of the act of congress of 1834 were modified by that of 1875, so far as relates to those parts of the Allegany reservation within the villages mentioned in the latter act of congress. The Cattaraugus Bail way Company and its successors, therefore, acquire no right from the lease to it, except such as was derived from the act of congress of 1875. By virtue of the same act, the prior lease■—-the source of the defendant’s claim of right to possession — was also ratified. There does not seem to be anything inconsistant with this view in the determination made in People v. Beardsley, 52 Barb. 105, of the questions there presented. While it is within the legislative power of the state to prohibit intrusion of residence upon the reservations by persons other than Indians, and to provide for police regulations there, it has no power to impose taxes upon their lands. People v. Dibble, 16 N. Y. 203 ; 21 How. 366; The New York Indians, 5 Wall. 761.
As bearing upon the matter of the priority of the leases in question, the plaintiff put in evidence a judgment recovered October 23d, 1873, by .the Seneca Nation of Indians, against William Dinter, in an action of ejectment brought to recover possession of premises, including those in question. The judgment, by force of the statute, was conclusive as to the title established in such action upon Dinter, and against all persons claiming from, through, or under him by title accruing after the commencement of the action in which the recovery was had. 2 Rev. St. p. 309, §36; Bates v. Stearns, 23 Wend. 482; Briggs v. Wells, 12 Barb. 576; Dawley v. Brown, 79 N. Y. 390. The judgment was not executed. Dinter remained in possession; and afterwards, in 1880, the lease under which he went into occupancy of the premises was renewed by the Seneca Nation. He, at the time the judgment was recovered, had, as against the nation, no right to the possession, for the reason before stated; nor had the plaintiff then any right to it. He remained in the possession of the premises when the act of congress of 1875 was approved, and thereafter until his right under the act to renewal of the McDonald lease was, pursuant to it, recognized, and the lease re- *690 lie wed by the Seneca Nation. In view of these facts it is not seen that the recovery of the judgment in the ejectment action against him can inure to the benefit of the plaintiff, so as to give the leases under or through which it claims priority over that under which Dinter may be deemed to have occupied the premises, when support came to it from the act of congress, and by its renewal, to him, pursuant to such act. These views led to the conclusion that the plaintiff is not entitled to recover. None of the rulings at the trial require consideration.
The judgment should be affirmed.
All concur.