Mr. Justice GRIER
 

 delivered the opinion of the court.
 

 .This case is brought before us by a writ of error to the Supreme Court of New York, under the 25th section of the judiciary act. It had its origin in a proceeding before the county judge of. Genesee county, instituted by the district attorney against Asa Cutler, John Underhill, and Arza Underhill, the relators, pursuant to the provisions of an act of Assembly entitled “An a.ct respecting intrusion on Indian lands,” passed March 31, 1821.
 

 This act made it unlawful for any persons other than Indians to settle and reside upon lands belonging to or occupied by any tribe of Indians, and declared void all contracts made by any Indians, whereby any other than Indians should be permitted to reside on suchiands; and if any persons should settle or.reside on any such lands contrary to the act, it was made the duty of any judge of any county court where such lands were situated, on complaint made to him, and due proof of such residence or settlement, to issue his warrant, directed to ' the sheriff, commanding him to remove such persons.
 

 
 *369
 
 On notice to the relators of the institution of this proceeding,they appeared before the judge and pleaded to his jurisdiction, on the ground that they had entered and occupied the lands, claiming title under a written instrument adversely to the Seneca nation of Indians, and therefore, by the Constitution and laws of the State, they were entitled to a trial by jury, according to the course of the common law, and could not thus be removed by summary proceedings under this act. -
 

 This plea was overruled by the judge. The relators then pleaded that this tract of 12,800 acres, called the Tonawanda reservation, was not owned by the Seneca Indians; that by a, treaty made with the United Stat'es on the 20th ofMay, 1842,. the Seneca nation of Indians had by indenture set forth in the treaty conveyed to Thomas Ludlow Ogden and Joseph Eellows this tract of land, with others; that this grant was duly confirmed by the State of Massachusetts, pursuant to the provis-. ions of the act of cession made-between that Stale and the State of New York, on the 16th of December, 1786.; -that the whole amount of the consideration stipulated by the treaty and-deed had been paid by said.Ogden and Eellows; and that relators were in possession under said Ogden and Eellows, and adr. versely to the Indians. * They therefore denied the power and . authority of the judge to determine their right to the lands in¿ their possession, or to remove them, under "the powers conferred by the act of Assembly of New York.
 

 After hearing the parties, the judge decided against the relators, who removed the proceedings by
 
 certiorari
 
 to the Supreme Court.
 

 The record contains the testimony on both sides, and numer-' ous documents concerning the treaty with the Seneca Indians, and also the subsequent proceedings by the officers of the Gov- .■ eminent. 'It will not be necessary to-a clear apprehension of oiir decision in this case to state them particularly, nor is it material to. our inquiry whether the judge may have erred in . his decision, that “the Seneca nation had not duly granted and conveyed the reserve in question to Ogden and Eellows.”
 

 The Supreme Court and Court of Appeals of New York have decided, “that the provisions of this act respecting intrusions .
 
 *370
 
 on'Indian lands, which authorize the summary removal of per sons, other.than Indians, who settle ¿preside upon lands belonging to or occupied by any nation - or tribe of Indians, are constitutional, and that a citizen who entfers upon their land before their title has been extinguished, and they have removed, or have been removed by the act of the Government, can acquire nó such right of property ¿r possession as is within the protection of the provisions of the Constitution which secure a trial by jury.” They therefore affirmed the judgment of the county judge.
 

 The only question which this court can be called on to decide is, whether this law is in conflict with the Constitution of the United States, or any treaty or act of Congress, and whether this .proceeding under it has deprived the relators of property or rights secured to them by any treaty or act of Congress.
 

 The statute in question is a police regulation for the protection of the Indians from intrusion of the white people, and . to preserve the peace. It is the dictate of a prudent and j ust policy. Notwithstanding the peculiar relation which these Indian nations hold to the Government of the United States, the State of New York had the power of a sovereign over their persons and property, so far as it was necessary to preserve the peace of the Commonwealth, and protect these feeble and helpless bands from imposition and intrusion. The power of a State to make such regulations to preserve the peace of the community is absolute, and has never been surrendered. The act is therefore not contrary to the Constitution of the United' States'.
 

 Nor is this statute in conflict with any act of Congress, as no ■ law of Congress can be found which authorizes white men to intrude on the possessions of Indians.
 

 Is it in conflict with rights acquired by Ogden and Fellow's; under the treaty, and contract making'.a part of it? If the treaty of 1842 had been executed; if the United States, in their character of sovereign guardian of this nation,, had delivered up the possession to these purchasers, then this statute of New. York, when applied to them, would clearly be in.conflict -with their rights acquired under the treaty. But, bythe case, it is admittéd that the Indians have not been removed by the Uni
 
 *371
 
 ted States. The Tonawanda band is in peaceable possession of its reserve, and has hitherto refused to surrender it. Unless, therefore, these persons claiming under Ogden and Fellows have by the treaty a right of entry into these lands, and, as a consequence, to forcibly oust the possessors or turn them out By action of ejectment, they cannot allege that this summary removal by authority of the statute of New York is in conflict with the treaty, or any rights secured to the purchasers undei’ it. This proceeding does not affect their, title. The question of the validity of .this treaty to bind the Tonawanda band is one to be decided, not by the courts, but by the .political power which acted for and with the Indians. So far as the 'statute of New York is concerned, it only requires that the Indians bo in possession; they are not bound to show that they are'owners-. They may invoke the aid of the statute against all white intruders, so long as, they remain in the peaceable possession of their lands.'
 

 The relators cannot claim the protection'of the treaty, unless they have a right of entry given them by it, before the Indians are removed by the Government. This court have decided, in the case of Fellows
 
 v.
 
 Blacksmith, (19 Howard, 366,) that this treaty has made no provision as to the mode or manner in which the removal of the Indians or the surrender, of their reservations was to take place; that it can be carried into execution only by the'authority or power of the Government which was a party to it. The Indians are to be removed to their new homes by their guardians, the United States, and cannot be expelled by irregular force or violence of the individuals who claim to have purchased their lands, nor even by the. intervention of the courts of justice. Until such removal and surrender of possession by the intervention of the Government of the United States,'the Indians and their possessions are protected, by the laws of New York, from the intrusion of their white neighbors.
 

 We are of opinion, therefore, that this statute and the proceeding in this case are not in conflict with the treaty in question, or with any act of Congress, or with the Constitution of the United States. The judgment- of the Court of Appeals o.f New York is therefore affirmed, with costs..