### RICE v. MAYBEE et al.
#### No. 973.

District Court, W. D. New York.

Feb. 27, 1933.

Robert M. Codd, of Buffalo, for plaintiff.

Congdon & Congdon, of Gowanda, for defendants.

KNIGHT, District Judge.

The parties hereto are Seneca Indians, residing on the Cattaraugus Reservation, in the state of New York. On or about October 31, 1903, one Solomon Maybee executed an instrument in writing wherein he purported to convey all his interest in certain lands on such reservation in trust to one Hattie Jemison for the benefit of his wife, named therein Hattie Jemison, and their four daughters, such trust to become effective on the death of Solomon Maybee and to continue during the lives of said mother and daughters. Plaintiff herein, one of the cestui que trust, has succeeded to the interest of all other beneficiaries named in the deed. The deed in question purports to have been recorded in the records of the Cattaraugus-Allegany Reservation on June 29, 1907. The defendants are children of Solomon Maybee by a marriage prior to that with Hattie Jemison, and claim to have succeeded to any interest of the other children of such prior marriage. Solomon Maybee died in or about 1909. The lands described in the deed consist of two parcels, one of twenty acres and one of fifty acres. The former parcel is involved in this action. Defendants claim that through proceedings had in the Surrogate's Court of the Cattaraugus Indian Reservation an administrator of the estate of Solomon Maybee was appointed in the year 1909, and that such action was taken that the fifty acres were then set apart to Hattie Jemison Maybee and her children and that the twenty acres were set apart to the children by the first marriage, subject to the use thereof of Hattie Maybee for two years thereafter. Both parties claim to have been in possession of such twenty acres since in or about 1909. It does not appear that there was any executed instrument in writing providing for the division as claimed by defendant, but there is some evidence that all the parties verbally agreed to such division.

On or about June 26, 1931, this plaintiff brought an action in the Peacemakers' Court of the Seneca Nation of Indians against these defendants to recover on account of trespass on the lands in question, and claimed the right to possession as the owner thereof. Issue was joined by an answer asserting ownership and right to possession of such land, and setting forth a counterclaim for damages. The trial before the Peacemakers' Court resulted in a decision that the defendants were the owners and entitled to possession of the twenty acres and awarding damages to defendants. No appeal was taken from that decision to any court. The action at bar is brought to obtain the same relief in effect sought in the Peacemakers' Court.

The first question to be answered is whether the Peacemakers' Court had jurisdiction to determine the issue raised before it. An answer in the affirmative obviates the need for the determination of any other questions which are raised by the pleadings.

Since the organization of the Confederation of States, the tribes of the Six Nations of Indians have occupied a status, as regards their rights and responsibilities, different from that of many other tribes. This has been brought about through the controversy over the title to the lands of these tribes and the methods in dealing with them by nation and state. Massachusetts and New York both laid claim to lands of the Senecas, including those of the Cattaraugus Reservation. Settlement between them was made by cession by Massachusetts to New York "of the sovereignty and jurisdiction of the lands" and from the latter to the former, of the "right of pre-emption of the soil from the native Indian." Such right of "pre-emption" was transferred to individuals whose acts in the purchase of Indian title, then claimed to include the lands in the Cattaraugus Reservation, were long the subject of suspicion and criticism. Whether by concession of these purchasers or in default of any right in them, the Indians on the Cattaraugus, and other reservations in Western New York, have occupied the lands composing them as groups having a distinct and separate organization and control. For upwards of a century the federal government dealt with these tribes through treaties, and time and again it has recognized the right of occupancy in these tribes. The Indian has always contended that he had a fee-simple title in these lands. The law of the land, however, is that such title is limited.

While by treaties, and through the Constitution and certain statutes, the federal government has assumed a measure of control over the activities of the Indians of this and other reservations, it has not gone to the extent of regulating or directing the administration of government within the tribal domains of the Seneca Indians. It is settled beyond peradventure of a doubt that the federal government has paramount authority over them. In one of the last-reported cases

upon this subject in the court of last resort in New York state, we find this language: "They are the wards of the nation, and Congress has full authority to legislate for them within their reservation. * * * When the state of New York legislates in relation to their affairs, its action is subject to the paramount authority of the federal government." Mulkins v. Snow, 232 N. Y. 51, 133 N. E. 123, 124. The Supreme Court has time and again declared that such authority lies in the federal government. The Kansas Indians, 5 Wall. 756, 18 L. Ed. 667; Worcester v. State of Georgia, 6 Pet. 515, 8 L. Ed. 483; The New York Indians, 5 Wall. 761, 18 L. Ed. 708; United States v. Kagama, 118 U. S. 375, 6 S. Ct. 1109, 30 L. Ed. 228; Heckman v. United States, 224 U. S. 413, 32 S. Ct. 424, 56 L. Ed. 820; United States v. Nice, 241 U. S. 591, 36 S. Ct. 696, 60 L. Ed. 1192; United States v. Waller, 243 U. S. 452, 37 S. Ct. 430, 61 L. Ed. 843.

In 1848 the Seneca Indians adopted a so-called "Constitutional Charter," abolishing the ancient form of government by chiefs, and setting up a new form of government composed of legislative, executive, and judiciary departments. In the judiciary department it provided for Peacemakers' Courts in which the jurisdiction would be "the same as in courts of justices of the peace of the state of New York, except in proof of wills, and the settlement of deceased persons' estates, in which cases the Peacemakers shall have such power as shall be conferred by law." It also provided that "all cases of which the Peacemakers have not jurisdiction may be heard before the Council, or such courts of the state of New York as the Legislature thereof shall permit." The council is the lawmaking body. This charter also provided that all laws of the state of New York, not inconsistent with the provisions of the charter, were to continue in full force. This charter was amended in 1898 to provide that these courts have "exclusive jurisdiction in all civil cases arising between Indians residing on said reservation except those of which the Surrogate's Court has jurisdiction." Since the organization of New York state, that state has written upon its statute books many laws relative to the management of the affairs of the Indians in these reservations. The Indian charter contemplates a measure of control by the state. The general Indian Law of New York state is included in chapter 26 of the Consolidated Laws, and among its many provisions with reference to the Seneca Indians we find that it provides for a Peacemakers' Court, with "authority to hear and determine all matters, disputes and controversies between any Indians residing upon such reservation, whether arising upon contracts or for wrongs, and particularly for any encroachments or trespass on any land cultivated or occupied by any one of them, and which shall have been entered and described in the clerk's books of records" (section 46), and, further, "jurisdiction * * * to hear and determine all questions and actions between individual Indians residing thereon involving the title to real estate on such reservations." It is clear that the provisions of the Indian charter and this section of the Indian Law include actions such as the one at bar and the action brought before the Peacemakers' Court. Section 50 of the Indian Law, New York, provides for an appeal from the decision of the Peacemakers' Court to the council, which was the lawmaking body in the Indian reservation. Here we have both the tribal law and the state law purporting to confer jurisdiction.

The Peacemakers' Court did not originate with the state. It was the creation of the Indians themselves. As the court in Mulkins v. Snow, supra, said: "It is an Indian court which has been recognized and given strength and authority by statute. It does not owe its existence to the state statute and is only in a qualified sense a state court." Matter of Patterson v. Council of Seneca Nation, 245 N. Y. 433, 157 N. E. 734.

The federal government has specifically declared its power to regulate commerce with the Indian tribes. It has reserved to itself jurisdiction over certain major criminal offenses, and it has provided that the federal courts shall have original jurisdiction "of all actions * * * involving the right of any person * * * to any allotment of land under any law or treaty." Jud. Code § 24 (24), 28 USCA § 41 (24). The implication from the adoption of these provisions is that it left a certain measure of control to be provided by tribal law or by the state. In addition to the Indian Law above mentioned, attention should be drawn to the fact that the state has retained to itself jurisdiction over certain criminal offenses on the reservation. It has established and maintained Indian schools, constructed roads and bridges on the reservations, and aided the Indian social welfare service.

The state courts have uniformly upheld the jurisdiction of the Peacemakers' Court in controversies within the limitations of the Indian acts and the state law. Silverheels v. Maybee, 82 Misc. 49, 143 N. Y. S. 655; People ex rel. Jimeson v. Shongo, 83 Misc. 325,

144 N. Y. S. 885; In re People ex rel. Jamerson v. John, 80 Misc. 421, 141 N. Y. S. 225; and Jones v. Gordon, 51 Misc. 305, 99 N. Y. S. 958; U. S. ex rel. Pierce v. Waldow (D. C.) 294 F. 111. The precise question involved here was passed on in Silverheels v. Maybee, supra. Jimeson v. Shongo, supra, sustained the jurisdiction of the Peacemakers' Court in an action for partition of land.

The federal courts have with practical unanimity held that, where the federal government has failed to take action relative to rights of tribal Indians to litigate questions between themselves, the federal court will not assume jurisdiction, and state jurisdiction is recognized. As was said in United States ex rel. Kennedy v. Tyler, 269 U. S. 13, 46 S. Ct. 1, 2, 70 L. Ed. 138, "It is enough * * * to say that the state of New York, as early as 1849, * * * assumed governmental control of them, * * * passed laws creating and defining the jurisdiction of the peacemakers' courts, administered these laws through its courts, and that Congress has never undertaken to interfere." Vide, also, New York ex rel. Cutler v. Dibble, 21 How. 366, 16 L. Ed. 149; Bates v. Clark, 95 U. S. 204, 24 L. Ed. 471; United States v. Seneca Nation (D. C.) 274 F. 946; Standley v. Roberts (C. C. A.) 59 F. 836; In re Celestine (D. C.) 114 F. 551.

Plaintiff claims the federal government has legislated to control jurisdiction in this case by enactment of section 24, subd. 24, Judicial Code (28 USCA § 41 (24), which provides that the United States shall have original jurisdiction "of all actions, suits, or proceedings involving the right of any person, in whole or in part of Indian * * * descent, to any allotment of land under any law or treaty." It does not seem to me that this section has any application here. The question of the allotment of land is not involved.

Whether or not the Indian Law of the state of New York is of any force or effect would not necessarily be conclusive here. The charter or Constitution of the Seneca Indians is sufficient to support the jurisdiction of the cause of action herein. Moreover, it seems to me that the Indian Law of New York state, in so far as at least it is consistent with and supplemental to the tribal law, is constitutional and is a valid exercise of state authority.

I am of the opinion that the Peacemakers' Court had jurisdiction, and that therefore this action cannot be maintained. The decision based on this ground renders it un-

necessary for me to pass on the question of adverse possession and also any question of the right of the plaintiff in the first instance to sue in the federal court rather than the state court.

While this court cannot disturb the decision of the Peacemakers' Court, it cannot refrain from pointing attention to the fact that the findings of the Peacemakers show their utter incapacity to determine important property rights, nor refrain from stating its accord with the frequent statement of the courts that the confusion on the question of federal and state jurisdiction is most detrimental to these tribes.

Complaint dismissed, with costs to defendants. Findings may be prepared to accord with this decision, or the decision may be treated as findings, as the parties elect.