In the Matter of COPLIN YARAS, Respondent. CITY OF ALBANY, Appellant.

Third Department, December 22, 1953.

*Russell G. Hunt, Corporation Counsel (Samuel Jacobs* of counsel), for appellant.

*Ernest B. Morris* for respondent.

HALPERN, J. The City of Albany appeals from an order transferring to the Supreme Court a condemnation proceeding which it had instituted in the County Court. The order was granted under the purported authority of section 110-a of the Civil Practice Act, authorizing the removal of an action or special proceeding from a court of limited jurisdiction which does not have full power or jurisdiction in the premises, to the proper court having jurisdiction.

The respondent Yaras was one of the defendants in the condemnation proceeding and he sought and obtained the removal order upon the ground that, under the legislative charter of the City of Albany, exclusive jurisdiction of condemnation proceedings was vested in the Supreme Court and that the local law which attempted to repeal this provision of the legislative charter was void and ineffective. The City of Albany on the other hand, contended that the local law was valid and had effectively repealed the provision of the legislative charter and that, therefore, the provision of the State-wide Condemnation Law had become applicable to the City of Albany and that under that law the condemnation proceeding was properly instituted in the County Court.

Two questions are presented for decision: (1) whether this is an appropriate case for the granting of a removal order under section 110-a of the Civil Practice Act; (2) whether the local law repealing the provision of the Albany City Charter specifying the method of procedure for the condemnation of real property was valid and effective.

(1) In our view, section 110-a was improperly invoked in this case. As originally adopted (L. 1932, ch. 605), section 110-a dealt only with actions which had been instituted in a court of limited jurisdiction for an amount which was within the mone-

tary jurisdiction of the court and in which it later appeared that the actual damages were in excess of the court's jurisdiction. Removal of the action to a court having jurisdiction was then authorized in order to avoid the expense and effort of discontinuing the action and suing it over again in the proper court.

In 1943, in connection with the drafting of a proposed Uniform City Court Act, the Judicial Council recommended that the scope of section 110-a be enlarged so as to embrace not only cases of mistake as to the amount of the damages sustained but also cases in which a question as to the title of real property was raised which the court did not have jurisdiction to decide (see Eighth Annual Report of N. Y. Judicial Council, 1942, pp. 314–315). This was intended to be a substitute for "the technical and expensive procedure now provided by the Justice Court Act (secs. 172–179) ", which had been incorporated into many City Court acts, for the disposition of cases in which the defendant set up in his answer a claim " that the title to real property will come in question " in the action. Subdivision 1 of section 110-a was amended substantially in accordance with the Judicial Council's recommendation (see L. 1943, ch. 475, and the official note to the chapter as it appears in the Session Laws: " This amendment was recommended by the Judicial Council. It is ancillary to the Uniform City Court Act ").

The subdivision as amended read as follows, the parts added in 1943 being italicized: " 1. Whenever in any action or special proceeding it shall appear *that the title to real property will come in question or* that the damages sustained are greater in amount than originally alleged, claimed or prayed for in any pleading and the court in which such action or proceeding is pending *does not have jurisdiction thereof or* is not empowered to award a judgment for such increased amount, *or the court does not have jurisdiction of the subject-matter,* the action or proceeding may be removed to a court having the proper jurisdiction."

As amended, section 110-a still deals with only two classes of cases: (1) cases in which the amount of the damages turns out to be greater than the amount the court is empowered to award, (2) cases in which a question as to the title to real property is raised in a court which has no jurisdiction to decide such questions. The reference in the latter part of subdivision 1 of section 110-a to the court's not having " jurisdiction of the subject-matter ", upon which the Special Term placed stress, must be read in the light of the first part of the sub-

division, limiting the scope of the section to the two classes of cases enumerated therein.

Subdivision 3 of section 110-a provides that after the removal of the case it '' shall continue in such court as if originally instituted therein ''.

The section was not intended to cover a situation such as that presented here nor can it fairly be adapted to serve in such a situation. The County Court is not a court, like a Justice Court or a City Court, which has no jurisdiction to decide questions of title to real property (see Civ. Prac. Act, §§ 67, 69). The objection raised by the respondent here is not based upon any limitation upon the general jurisdiction of the County Court, but is based rather upon the claim that the statute under which the proceeding was brought was not applicable to the City of Albany and that a different type of proceeding should have been brought in the Supreme Court under the Albany City Charter. The procedure under the Condemnation Law is wholly different from that under the charter. The Condemnation Law provides for the institution of the proceeding by the personal service of a notice and petition; the charter provides only for publication of a newspaper notice; the Condemnation Law contains provisions for an answer by the defendants and a preliminary trial and judgment; there are not such provisions in the charter. The proceeding under the Condemnation Law instituted in the County Court could not be converted into a proceeding in the Supreme Court under the Albany City Charter by means of a removal order. As a matter of fact, the removal order here appealed from does not purport to convert the proceeding into a proceeding under the City Charter; it leaves in obscurity how the parties are to proceed after the removal is effected.

If the respondent's contentions were sound, the whole proceeding in the County Court was ill-founded and the respondent's remedy was to move in the County Court for a dismissal of the proceeding. The proceeding was not one which could be effectively or appropriately removed to the Supreme Court upon an application to that court under section 110-a.

Neither does section 110 of the Civil Practice Act (L. 1920, ch. 925), which ante-dated section 110-a, provide a statutory basis for the removal order. Section 110 deals with cases in which as the result of a mistake in the selection or naming of the court, the action or proceeding was brought in the wrong court. The Supreme Court is authorized to remove the action or proceeding to the proper court and in that case

" the subsequent proceedings must be the same as if the action or proceeding had been instituted in the court to which the removal is made ". This section has no application to a case in which it is claimed that the proceeding originally instituted was wholly invalid and that another proceeding of a different type should have been brought in another court.

The removal order must, therefore, be reversed without regard to the validity or invalidity of the respondent's contentions on the merits.

(2) However, in view of the public nature of the question here involved, we do not wish to rest our decision solely upon procedural grounds and we accordingly pass to a consideration of the merits.

A direct appeal had been taken in this case to the Court of Appeals on alleged constitutional grounds. The Court of Appeals dismissed the appeal " upon the ground that there are questions involved other than the validity of a statutory provision under the State or the Federal Constitution " (305 N. Y. 580). The background of the controversy is well summarized in the syllabus prepared by the State Reporter: " Exclusive jurisdiction of condemnation proceedings in the city of Albany had been vested in the Supreme Court (L. 1883, ch. 298). The Condemnation Law (§ 3) provided a State-wide procedure for the acquisition of title to real property and authorized condemnation proceedings to be brought in the County Court, as well as in the Supreme Court (§ 4). Section 27 thereof excepts from the operation of the law ' such acts and parts of acts as prescribe a method of procedure for the condemnation of real property for public use as a highway, or as a street, avenue, or public place in an incorporated city '. As a result, the provisions of chapter 298 of the Laws of 1883 (Albany City Charter) continued to control and required condemnation proceedings to be brought in the Supreme Court. On March 7, 1951, a local law of the city of Albany was enacted and provided for the (1) repeal of provisions for the appointment of a janitor and as assistant for a building not owned by the city, (2) repeal of provisions for monthly and annual reports to be made by the city chamberlain, (3) repeal of provisions respecting notices of unpaid taxes, and (4) repeal of procedure for the condemnation of real property."

The title of the local law was as follows: "A local law repealing certain provisions of titles four, six, seven and seventeen of chapter two hundred ninety-eight of the laws of eighteen hundred eighty-three of the state of New York entitled ' An act

to provide for the government of the " city of Albany "," passed April twenty-third, eighteen hundred eighty-three, as amended from time to time." (Local Laws, 1951, No. 1 of City of Albany.)

The text of the local law referred to the provisions to be repealed solely by section and title number of chapter 298 of the Laws of 1883.

As is noted above in the summary of the substance of the statute, the local law repealed various obsolete or outmoded provisions of the Albany City Charter including, among others, the provision specifying the method of procedure for the condemnation of real property. This had the effect of allowing the State-wide Condemnation Law to become applicable to the City of Albany and the City of Albany thereafter commenced the condemnation proceeding in the County Court under the provisions of the Condemnation Law.

Two attacks are made upon the validity of the local law. One is that the title of the local law was inadequate and the other is that the local law dealt with two or more subjects in violation of subdivision 3 of section 13 of the City Home Rule Law. Subdivision 3 of section 13 reads as follows: " Every such local law shall embrace only one subject. The title shall briefly refer to the subject matter."

We believe that the title of the local law was adequate. The title indicated that the local law repealed various provisions of the City Charter. It identified the repealed provisions by reference to the titles in which they were to be found in the City Charter and it identified the City Charter both by its title and chapter number and by the date of its passage. This was a sufficient index to the contents of the local law. A title is not required to be a summary or abstract of the contents of the law (*Matter of Clinton Ave.*, 57 App. Div. 166, 171, affd. 167 N. Y. 624). If an abstract of the law is needed for use upon a referendum, that is to be subsequently prepared by the city clerk with the advice of the corporation counsel or city attorney (City Home Rule Law, § 18). It has been repeatedly held, where a parallel problem has arisen as to the sufficiency of the title of a local bill passed by the New York State Legislature, under section 15 of article III of the New York State Constitution, that where the bill revises or amends a city charter, a reference to the charter which is affected by the bill is, in and of itself, sufficient to constitute a valid title for the bill (*Harris* v. *People*, 59 N. Y. 599, 602; *People ex rel. City of Rochester* v. *Briggs*, 50 N. Y. 553, 561; *Willis* v. *City of Rochester*, 219 N. Y. 427).

The special nature of charter amendments is given recognition in subdivision 5 of section 2 of the City Home Rule Law as added by chapter 602 of the Laws of 1944: '' the term ' charter amendment ' means any change in an existing charter presented as such under authority of this chapter or any charter or state statute ''. Under this provision, if the local law consists of a '' charter amendment '' it may be "presented as such " by simply stating in the title that it amends the charter of the named city.

The remaining objection to the local law we also find to be without merit. As has already been noted, the local law here involved consisted of an amendment to the City Charter. As such, it was exempt from the restriction contained in subdivision 3 of section 13 limiting a local law to a single subject. Subdivision 5 of section 2 of the City Home Rule Law, as added by chapter 602 of the Laws of 1944, specifically provides: '' A charter amendment may be of any extent and may deal with any number of subjects ''.

Under the 1944 amendment to section 2, a charter need not be amended piecemeal by a series of separate local laws but a single charter amendment may be proposed dealing with various provisions of the charter (see, for a discussion of other effects of the 1944 amendment, *Matter of Grenfell* [*Lawyer*], 269 App. Div. 600, affd. 294 N. Y. 610, and *Matter of Warden* [*Newburgh Police Dept.*], 300 N. Y. 39).

Furthermore, even if the provision of subdivision 3 of section 13, limiting a local law to a single subject, were applicable here, the local law would be valid. The law dealt only with a single general subject, namely, the revision of the charter by the removal therefrom of outmoded provisions. Even before the clarifying amendment of 1944 was adopted, it was held that a local law amending various provisions of a city charter dealt only with a single subject, within the meaning of subdivision 3 of section 13 (*Burke* v. *Kern*, 287 N. Y. 203; see, also, for similar holdings with respect to amendments to city charters adopted by the State Legislature: *Village of Gloversville* v. *Howell*, 70 N. Y. 287; *Conner* v. *Mayor, etc., of New York*, 5 N. Y. 285).

The Special Term held that it was improper to combine in a single local law the repeal of the condemnation provision with the repeal of other provisions of the charter because, according to the Special Term's view, the repeal of the condemnation provision was subject to a permissive referendum whereas the repeal of the other provisions did not give rise to a right on

the part of the electors to demand a referendum. This difference between the two types of provisions, the Special Term held, demonstrated that they constituted different subjects which could not be combined in a local law under subdivision 3 of section 13.

It is questionable whether the repeal of the condemnation provision gave rise to the right to a referendum. Section 17 of the City Home Rule Law provides that a local law shall be subject to a referendum if it "Changes a provision of law relating to  *  *  *  the exercise of the power of condemnation". The word "changes", as used in this section, refers to an amendment which substitutes one form of local procedure for another form of local procedure. It is only in such a case that there is any reason for giving the local electors the right to protest against the local law and to insist upon a vote as to the fairness or desirability of the proposed new procedure. It may therefore well be held that the provision for a referendum does not apply to a case of a total repeal of the local provision, leaving in operation only a State-wide statute on the subject.

However, no final conclusion need be reached upon this point since, even if it is held that the referendum provision applied to the condemnation repeal and that this demonstrated that the condemnation repeal was a separate subject, the local law was a valid one, as a general charter amendment. As has already been pointed out, a charter amendment may embrace different subjects under the express provision of subdivision 5 of section 2. The only effect of including in a general charter amendment a specific matter which is subject to a referendum is to make the whole amendment subject to a referendum (cf. first sentence of section 16 of the City Home Rule Law). No referendum was sought in this case under the provisions of section 16 of the City Home Rule Law within the time limit therein specified so the local law became operative and was in full force and effect at the time of the institution of the condemnation proceeding in the Albany County Court.

The orders appealed from should be reversed on the law and the motion to remove the proceeding from the County Court to the Supreme Court should be denied, with $10 costs.

FOSTER, P. J., BERGAN, COON and IMRIE, JJ., concur.

Orders appealed from reversed, on the law, and the motion to remove the proceeding from the County Court to the Supreme Court denied, with $10 costs.