Desmond, J. (dissenting).
First enacted as chapter 204 of the Laws of 1821, the statute which is now section 8 of the New York Indian Law prescribes a summary procedure for ousting from ‘ ‘ lands owned or occupied by any nation, tribe or band of Indians ” in this State any intruders, that is, any persons attempting to settle or reside on such lands ‘1 except the members of such nation, tribe or band.” In People ex rel. Cutler v. Dibble (16 N. Y. 203, affd. 62 U. S. 366) the purpose of such a proceeding was authoritatively stated as being “ to remove intruders from what are indisputably the ungranted lands of the state, or the reservations of the Indian tribes ” (16 N. Y., p. 214). The holding of this court in the Dibble case, never since questioned, was that “ the order of removal adjudicates upon no claim, and determines no right or title, but leaves the party removed to the usual remedies to assert and establish any title to the locus in quo which he may deem himself to possess ” (same page). The lower court Dibble decision (18 Barb. 412) which this court affirmed had said (pp. 415-416) that, in order *445 to give a County Judge jurisdiction of such a removal proceeding, “ it must appear, undoubtedly, that the intrusion was upon indian lands, that is, lands belonging to or occupied by a nation or tribe of indians The United States Supreme Court, affirming this court in Dibble, declared that “ The statute in question is a police regulation for the protection of the Indians from intrusion of the white people, and to preserve the peace ” (62 U. S., p. 370). Every other authority, early or late, construes the Dibble case as holding that a section 8 proceeding is purely a summary one whereby the State exercises its police power to keep the peace on Indian lands (see “ Federal Indian Law”, U. S. Dept. Interior, 1958, p. 514, n.; 27 Am. Jur., Indians, § 48, pp. 572-573; 42 C. J. S., Indians, § 72, p. 784; Judge Pound in 22 Col. L. Rev. 97-99; People ex rel. Ray v. Martin, 294 N. Y. 61, 72, 73; Matter of Stakel [Blueye], 281 App. Div. 183, affd. 306 N. Y. 679; Matter of Fischer [Checkman], 283 App. Div. 518; Matter of Herne, 133 Misc. 286).
Despite all this, the County Court in the proceeding here under review undertook to decide a question of title as between the Shinnecock Indians and the defendant corporations which had built houses on the lands in dispute. The dispute which made its appearance at the trial of this section 8 proceeding was as to the boundary line of premises to which these defendants held title. When it thus became apparent that this was no matter of removing squatters from undisputed Indian lands but an actual dispute as to ownership, the County Judge should have dismissed the proceeding as being unavailable for such a purpose. Instead, the court denied defendants’ motion on this jurisdictional ground for dismissal, and undertook to settle the contest as to boundary and title by making an order describing the land in litigation as being “ owned and occupied ” by the Shinnecock Tribe on whose behalf the District Attorney of Suffolk County (see § 8) had brought the proceeding. The Appellate Division affirmed, adopting from the Dibble opinion in this court the statement that the order “ does not determine right or title in the land [but] leaves the parties * * * to the usual remedies to assert and establish * * * title ”.
We agree with the Appellate Division that no section 8 order can determine the ownership of land which is in dispute between an Indian Tribe and other persons. However, it follows from *446 this that the Appellate Division, instead of affirming, should have reversed the County Court order and should have dismissed the proceeding, leaving the parties to the “usual remedies” to which the Appellate Division referred.
The Shinnecock Tribe of Indians, now numbering about 200 persons, has occupied lands on the easterly end of Long Island since before the white settlers arrived (see Report of Special Indian Committee, N. Y. State Assembly, Document No. 51, 1889, p. 53; and “ The Indian Today in New York State ”, published by N. Y. State Joint Legislative Committee on Indian Affairs and Interdepartmental Committee on Indian Affairs, rev. April 1, 1959, p. 10). Just a century ago in 1859, by authority of chapter 46 of the Laws of that year, various land transactions and disputes between the tribe and the Town of Southampton, Suffolk County, were settled (see People ex rel. Howell v. Jessup, 160 N. Y. 249) by an exchange of deeds which partitioned lands including the parcel here in dispute by conveying to the trustees of the Shinnecock Tribe a parcel known as Shinnecock Neck, south of an “Indian ditch” and by conveying to the town the lands lying north of that ditch (see reference in “ Federal Indian Law ”, supra, p. 984). Defendants in this proceeding derive their title through mesne conveyances from the Town of Southampton as such 1859 grantee. Whether the plot of land here in litigation was on the north or south side of the old “ Indian ditch ” in 1859 determines whether it belongs to the Shinnecock Tribe or to defendants, but the actual ditch has long since disappeared. The issue, therefore, which took form during the course of this trial, was as to a boundary line. For such an adjudication a section 8 proceeding could not validly be used.
Section 8 of our Indian Law is of the same character and meaning as the Federal “ intruder ” statutes passed by Congress from time to time (see U. S. Code, tit. 25, § 180, former §§ 220, 222; Cook v. Hudson, 110 Mont. 263, 285 et seq.; Murdock v. Farrell, 49 Utah 314, 319; Eells v. Ross, 64 F. 417; United States v. Flournoy Live-Stock & Real Estate Co., 71 F. 576; United States ex rel. Gordon v. Crook, 179 F. 391; Morris v. Hitchcock, 194 U. S. 384, 389; and see other Federal statutes cited in “Federal Indian Law”, supra, p. 632, n.) An assertion is made here that our present section 8 is somehow different in *447 meaning from its prototype construed in the Dibble case (supra). The difference is said to be that the statute now calls specifically for notice to the defendant and requires the County Judge to take proof of the facts, whereas neither of those requirements was expressed in the law at the time that Dibble was decided. However, this difference proves nothing since the Dibble case record shows that notice was given and that the facts were fully tried out before the court (and see People ex rel. Waldron v. Soper, 7 N. Y., p. 430 [1852]).'
Petitioner says that all questions as to the jurisdiction of the County Judge to decide the title dispute are out of the case because defendants waived this jurisdictional point. At the opening of the hearing, the County Judge asked defense counsel whether there was any objection to the procedure being pursued by the District Attorney, that is, any objection to the use of section 8. The defense attorneys answered that they had no objection and that there was no question of jurisdiction. Of course there was at that moment no question of jurisdiction since the District Attorney under the statute and as representing the tribe was before the court on a complaint that defendants were intruders on the tribal lands. That complaint required the Judge to issue a notice to the defendants and to hold a hearing, take proof of the facts and determine whether defendants were intruders “upon the lands of such reservation.” But a true jurisdictional question did come into the case when the proofs showed that this was actually an issue as to ownership of land. At that stage of the trial defense counsel made a timely motion to dismiss the proceeding on the ground that the court had no jurisdiction since it appeared that the land was not indisputably within the bounds of ah Indian reservation. The County Judge held that the jurisdictional point had been waived by defendants. We do not agree. Subject matter jurisdiction cannot be waived (see Meyers v. American Locomotive Co., 201 N. Y. 163, 166; Buckles v. State of New York, 221 N. Y. 418; Shea v. Export S. S. Corp., 253 N. Y. 17, 21) and, furthermore, the record here shows that there was in fact no intent to waive. Thus, although full proof was taken as to boundary and title, there was no jurisdiction in the County Court to make a determination thereon.
*448 There is other historical data which would make it highly inappropriate to use a ‘ ‘ reservation intruder ’ ’ statute like section 8 to decide this boundary line quarrel. The Shinnecocks have never had treaty relations or any other relations with the United States Government, they have lost such tribal customs and language as they may have used in times long past, their lands are not listed as ‘ ‘ reservations ’ ’ by the United States Indian Service and for generations they have been considered to be under New York State’s control, protection and government (see 1934 Atty.-Gen. 285; informal opinion of Attorney-General of New York, June 11,1941).
It is suggested that this determination should be allowed to stand and that the Shinnecock Tribe should have the benefit of it because it may be impossible, on account of the status of the Indian Tribe, to get a determination in any other form of litigation. That question is not before us now. However, we point out that sections 5, 11-a, 120 and 121 of the Indian Law make available to the Shinnecock Tribe and its members, as well as to those suing them, full access to our State courts (see St. Regis Tribe v. State of New York, 5 N Y 2d 24). Sections 5 and 11-a give full jurisdiction to the State courts as to Indian reservations like that of the Shinnecocks where there is no Peacemaker’s Court and make broad provision for actions and special proceedings in the State courts between Indians or between one or more Indians and any other person (see, as to Federal authorization for § 5 amdt., U. S. Code, tit. 25, § 233, and U. S. House Reports Nos. 2720, 3040, 81st Cong., 2d Sess. [1950]). More specifically as to the Shinnecock Tribe, sections 11-a and 121 authorize the trustees of that tribe to deal with the lands of the tribe including the maintenance of actions or proceedings to recover the possession of such lands of the tribe unlawfully occupied by others and for damages for such occupation.
The order should be reversed, without costs, and the proceeding dismissed.
Chief Judge Conway and Judges Dye and Bxjbke concur with Judge Fboessel; Judge Desmond dissents and votes to reverse and to dismiss the proceeding in an opinion in which Judge Van Voobhis concurs; Judge Fuld taking no part.
Order reversed, etc.