

# The Attorney General of Texas

August 23, 1979

MARK WHITE
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

723 Main, Suite 610
Houston, TX. 77002
713/228-0701

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4313 N. Tenth, Suite F
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable William P. Hobby
Chairman, Legislative Budget Board
Box 12666, Capitol Station
Austin, Texas 78711

Honorable D. R. "Tom" Uher
Chairman, State Affairs Committee
House of Representatives
Austin, Texas 78769

Opinion No. MW-49

Re: Authority of Texas Indian Commission to assist non-reservation Indians.

Gentlemen:

You ask several questions about the authority of the Texas Indian Commission to assist the Traditional Kickapoo Indians and intertribal Indian organizations. Article 5421z, V.T.C.S., gives the commission certain responsibilities and powers with respect to the Alabama-Coushatta and the Tigua Indian Reservations. The 65th Legislature enacted Senate Bill 168, which added the following provision to article 5421z:

> Sec. 11A. (a) The Traditional Kickapoo Indians of Texas are recognized as a Texas Indian tribe.
> (b) The commission shall assist the Traditional Kickapoo Indians and the intertribal Indian organizations chartered in this state in applying for and managing, jointly with the commission, federal programs and funds secured from the federal government or private sources for the purpose of improving health, education, and housing standards of these Indians or increasing their economic capabilities.
> (c) The commission may seek the cooperation of local and state agencies in administering programs or funds covered by Subsection (b) of this section.

Acts 1977, 65th Leg., ch. 399, § 2, at 1090.

Lieutenant Governor Hobby asks if the 1977 amendment allows the Texas Indian Commission to exercise the same powers and carry out the same responsibilities on behalf of the Traditional Kickapoo Tribe and the

intertribal organizations (non-reservation Indian community action groups) as those set out for the Alabama-Coushatta and Tigua tribes. Specifically, he asks (1) if the statute, as amended, constitutes preexisting law on which state appropriations to the Kickapoo and intertribal organizations may be based, and (2) if the Texas Indian Commission may enter into contracts on their behalf. Representative Uher asks whether appropriation of state money to "non-Texas Indians" is permitted under the Constitution. We need only address the constitutionality of section 11A in light of the federal equal protection clause. U.S. Const., amend. XIV.

The federal authority to enact legislation singling out tribal Indians derives from the power of Congress to regulate commerce with the Indian tribes, U.S. Constitution, art. I, § 8, cl. 3, from the treaty power, Id., article II, § 2, cl. 2, and from the federal trusteeship over Indian tribes established by the Indian Nonintercourse Act, 25 U.S.C. § 177. Worcester v. Georgia, 31 U.S. 515 (1832); Cherokee Nation v. Georgia, 30 U.S. 1 (1831); Joint Tribal Council of Passamaquoddy Tribe v. Morton, 528 F.2d 370 (1st Cir. 1975); Narragansett Tribe of Indians v. Southern Rhode Island Land Development Corp., 418 F. Supp. 798 (D.R.I. 1976). As a result of this paramount federal authority, Congress may

> enact legislation singling out tribal Indians, legislation that might otherwise be constitutionally offensive.

Washington v. Yakima Indian Nation, 58 L.Ed.2d 740 (1979). In upholding a Bureau of Indian Affairs employment preference for tribal Indians, the Supreme Court has said that

> this preference does not constitute 'racial discrimination.' Indeed, it is not even a 'racial' preference. Rather, it is an employment criterion reasonably designed to further the cause of Indian self-government.

Morton v. Mancari, 417 U.S. 535, 554-55 (1974). Since the special treatment was "tied rationally to the fulfillment of Congress' unique obligation toward the Indians," it did not constitute invidious racial discrimination.

The Supreme Court has emphasized, however, that states "do not enjoy this same unique relationship with Indians." Washington v. Yakima Indian Nation, supra. A state may enact legislation singling out tribal Indians only when authorized to do so by the federal government. Foster v. Pryor, 189 U.S. 325 (1903). State v. Dibble, 62 U.S. 366 (1859) (state laws benefitting federal recognized Indians); Cf. Joint Tribal Council of Passamaquoddy Tribe v. Morton, supra. The Alabama-Coushatta and Tigua tribes have been specifically recognized by federal law. 25 U.S.C. § 721-28; P.L. 90-287 (1968). But neither the Traditional Kickapoo Tribe nor the intertribal organizations have been accorded distinct and separate recognition, either by Congress or by the federal Bureau of Indian Affairs.

The state may not, in the absence of federal authorization, enact laws benefitting these Indians, and since there has been no federal authorization in this instance, section 11A is unconstitutional on its face.

Honorable William P. Hobby
Honorable D. R. "Tom" Uher    -    Page Three (MW-49)


Such a construction does not mean, however, that the State of Texas is powerless to assist either the Traditional Kickapoos or the intertribal organizations.  It is well established, after all, that Indians who live apart from their tribes are subject to the laws of the state in which they reside.  United States v. Waller, 243 U.S. 452 (1917); Ex parte Flournoy, 312 S.W.2d 488 (Tex. 1958).  Such legislation should be drafted, initially, to obviate the contention that it provides state benefits to Indian tribes or organizations not recognized by federal law or regulation and therefore, preempts the federal power to deal exclusively with Indians.  Second the legislation should attempt to avoid the allegation that it discriminates in favor of Indian tribes or individuals, and thus runs afoul of the constitutional guarantee of equal protection.  In the absence of federal authorization for the state to deal with these Indians, any program which provides them benefits should be designed and administered so that the availability of benefits is not limited to members of particular racial or ethnic groups.

In view of our determination that section 11A is invalid, we need not answer your other questions.

## SUMMARY

In the absence of federal authorization, the Texas legislature may not provide special benefits for Traditional Kickapoo Indians and members of intertribal councils.

Very truly yours,

MARK   WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

TED L. HARTLEY
Executive Assistant Attorney General

Prepared by Susan Garrison
and Rick Gilpin
Assistant Attorneys General

APPROVED:
OPINION COMMITTEE

C. Robert Heath, Chairman
David B. Brooks

Honorable William P. Hobby
Honorable D. R. "Tom" Uher    –    Page Four (MW-49)


Susan Garrison
Rick Gilpin
Eva Loutzenhiser
William G Reid
Bruce Youngblood