OPINION OF THE COURT
Joseph P. Kuszynski, J.
Plaintiff, the Tuscarora Nation of Indians, seeks an injunction enjoining defendants Hubert Swanson and Lillie Rae Swanson, his wife, from continuing with the construction of a permanent home upon the Tuscarora Indian tribal lands and a further order ejecting them as intruders from the Tuscarora Indian Reservation.
Although defendants have answered with a general denial, in their opening statement on trial, they argued that (a) estoppel and laches apply because the tribal chiefs were aware for a considerable period of time of defendants’ actions of improving the land by clearing it of timber and brush and bringing electrical power to the site preparatory to the construction, before acting to prevent defendants from building a home, (b) that regulations contained in section 1302 of title 25 of the United States Code bar their removal, and (c) that the principle of equal protection under the law has been violated because other persons similarly situated are permitted to reside on lands allocated to their ancestors and that defendants have thus been selected for discriminatory enforcement of tribal laws.
*430 During the first day of trial on December 1,1980, defendants were represented by counsel, but on the adjourned date of the trial, March 2, 1980, elected to proceed pro se.
Section 8 of the Indian Law directs the District Attorney and County Judge of a county where the affected tribal lands are situated to initiate and entertain removal proceedings. (Matter of Fischer [Checkman], 283 App Div 518.) This court feels compelled to allude to this question, although no jurisdictional defense was raised as the District Attorney and a County Judge of Niagara County where the Tuscarora Indian tribal lands are situated declined to take any action regarding removal of these defendants as intruders.
This court concludes that the directives of section 8 of the Indian Law do not exclude any other remedy which plaintiff may have regarding intruders upon its lands in light of section 5 of the Indian Law, effective July 1, 1953 and section 11-a of the Indian Law, effective April 7,1958. (See Matter of Jimerson v Halftown Estate, 22 AD2d 417.) The situation here is unlike that in Matter of District Attorney of Suffolk County v Great Cove Realty Co. (207 Misc 114, affd sub nom. Matter of Brenner v Great Cove Realty Co., 4 AD2d 749, revd on other grounds 6 NY2d 435).
By way of background, Hubert Swanson is a non-Indian. His wife, Lillie Rae Swanson, is the issue of a union between a Tuscaroran father and an Onondagan mother. Both the Tuscarora Indian Nation and the Onondaga Indian Nation are members of the Six Nation Confederacy of the Iroquois and by tribal law are matrilineal in determining an individual’s tribal heritage and identity.
Mrs. Swanson claims rights to continue in possession of the lands allotted to her parents from the mere fact of the residence of her antecedents on the Tuscarora Reservation. She testified that seven generations ago in the 1700’s, an Onondagan woman came to live on the Tuscarora Reservation and married a Tuscaroran. Mrs. Swanson claims direct lineage from this Onondagan woman through her mother Elma Williams, as in each succeeding generation, the females continued to marry a Tuscaroran. She contends that she is seven-eighths Tuscaroran.
*431 Plaintiff, the Tuscarora Nation of Indians, maintains that under its tribal law and also the Onondaga Nation, whatever claims Mrs. Swanson may have had to residence on the Tuscarora lands were extinguished when she married a non-Indian. Plaintiff points out that Mrs. Swanson does not own up to be a Tuscaroran, but identifies with and is an enrolled member of the Onondaga Nation and in fact, receives funds for herself and her children from the Onondaga Nation of Indians.
During the trial, the court was led to believe that plaintiff does not object to Mrs. Swanson and her family’s residence on the Tuscarora Reservation, but that if she chooses to live on the Tuscarora tribal lands, it must be in a recognized trailer park or other place designated by the chiefs in council.
Mrs. Swanson was born and lived all her life on the Tuscarora tribal lands. Her parents had a permanent home on Chew Road on the reservation. Her surviving parent Alfred Williams died in 1970 and his home was torn down in early 1971. Mrs. Swanson, from 1967, had resided in a trailer at a trailer park operated by the Reid family on Tuscaroran lands.
In 1974-1975, defendants moved their mobile home from the trailer court to the lands formerly allocated to her parents, and began preparations to erect a permanent home. The tribal chiefs in council claim that on or about May 23, 1975, defendants were advised that they could reside only in an established trailer court. It was testified on behalf of the plaintiff that in August, 1978, the chiefs first became aware that defendants were constructing a permanent home adjacent to their trailer and thereupon undertook various action to remove them from the reservation.
This court concludes upon the proof, that a defense of laches was not established, nor is there any discrimination practiced against the defendants in seeking their removal. The record is ample with proof that plaintiff through its Council of Chiefs had sought to remove defendants by way of other methods. The situation of the witnesses, Oralle Wilson and others through whose testimony defendants *432 sought to establish discrimination and an unequal enforcement of tribal law, are not analogous. These witnesses who are Mrs. Swanson’s aunts are married to Tuscarorans.
In a legal sense, the Tuscarorans residing* on the reservation and who have built homes are not “Owners” of the land upon which their homes have been erected, but “Allottees”. By a deed set forth in Liber of Deeds, A, page 5, running from the Holland Land Company to Henry Dearborn, in trust for the Tuscarora Nation of Indians, dated November 1,1804 and recorded April 30,1805, some 4,500 acres were conveyed. At no time was any of this acreage deeded out. An allotment of lands does not convey title, but merely grants the allottee, the right to occupy and use the land subject to tribal rules and regulations. (See Smith v Anderson, 20 Misc 2d 1038.)
Mrs. Swanson does not have any claim to any allotment of land on the Tuscarora Reservation. Her rights to her parent’s allotment were extinguished when she married a non-Indian and professed to be a member of the Onondaga Tribe.
Clearly, Mrs. Swanson cannot claim rights to a land allotment on the Tuscarora Reservation and simultaneously be a member of the Onondaga Nation. Her preference is to be enrolled with and to participate in the funds of the Onondaga Tribe.
Mrs. Swanson’s antecedents, by matrilineal law, are non-Tuscarorans. She and her husband are intruders upon plaintiff’s lands as they have not shown any right to remain there, either under the tribal laws of the Tuscarora or the Onondaga Nations. If defendants choose to remain on plaintiff’s lands they must do so at the sufferance of the Tuscarora Nation and must abide by its directives where to reside. The sovereignty of Indian units of government has long been recognized to continue with respect to reservation lands. (See Matter of Patterson v Council of Seneca Nation, 245 NY 433; People ex rel. Cutler v Dibble, 16 NY 203, affd 21 How [62 US] 366.)
In submissions made to this court after trial, unsupported allegations were made that a diversified situation exists concerning the background of the people who are *433 permitted by the chiefs in council to reside on the reservation.
Allegedly, there are 113 white people, 486 non-Tuscarorans and only 355 Tuscarorans residing on the reservation.
The rights of the other residents on the reservation are not before this court. What is before this court for determination is the status of the defendants who are being challenged in their claim that they have a right to reside on the reservation, although they admittedly are not Tuscarorans.